[Crim. No. 13. Fifth Dist. Nov. 30, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. VERNON
MACK, Defendant and Appellant.

Carolyn L. Kemmler, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and C. Michael Gianola, Deputy Attorney General, for Plaintiff and Respondent.

BROWN, J.—This is an appeal from a judgment of conviction of the defendant and from an order denying a new trial.

The District Attorney of Merced County filed an information by which defendant, Vernon Mack, and one Charles Arbuckle were accused of both branches of the crime of forgery, a violation of section 470 of the Penal Code. Subsequently, and on October 28, 1960, the district attorney filed an amended information against the defendant herein and Arbuckle, charging them with the offense of forgery by uttering and passing a check, knowing that it was false, with intent to defraud R. S. Froehlich.

The defendant Mack appeared in court with his counsel, the public defender, and later waived his right to the services of the public defender and expressed his desire to proceed without counsel. This request was granted and the defendant later personally moved that the amended information be dismissed, which motion was denied, and thereafter he entered a plea of "Not Guilty" and requested a jury trial. The matter was tried on November 17, 1960, at which time the clerk of the court read the *original* information to the jury, this information having been amended on October 28, 1960. The original information charged the defendant Mack and Arbuckle did ". . . make, forge and counterfeit a certain check in writing for the payment of money in the sum of

$40.00, and did then and there utter, publish and pass the same, knowing that the said check was false, forged and counterfeited as aforesaid, with the intent then and there to defraud R. S. Froehlich of Firebaugh, California, . . ."

This information is different from the amended information in which the said Vernon Mack and Charles Arbuckle were accused of the violation of section 470 of the Penal Code in that they ". . . did wilfully and unlawfully utter, publish and pass a certain check in writing for the payment of money in the sum of $40.00, and did then and there utter, publish and pass the same, knowing that the said check was false, forged and counterfeited. . . ."

In the trial after the People had concluded its case, the defendant Mack moved (in chambers, out of the presence of the jury) that the matter be dismissed ". . . on the grounds that the information in this case calls for a forgery of Penal Code Section 470, and to my knowledge of the section there has to be some one name forged on the document and the District Attorney, so far to my knowledge, has failed to show that either defendant signed, wrote or even endorsed this document in any way. And I feel, your Honor, that he has not established the corpus delicti in this case." This motion was denied.

The court instructed the jury as follows: "The defendants Vernon Mack and Charles Arbuckle accused by the Information filed in this Court which was read to you by the Clerk at the beginning of this trial with the crime of Forgery, a violation of Section 470 of the California Penal Code, a felony."

An additional instruction was given as follows: "Forgery is committed if a person, with intent to defraud, falsely writes or signs as an endorsement on the back of a check, bill of exchange, or other negotiable instrument, the name of the payee of such instrument or the name of any other person whose signature is necessary in order that the instrument may be cashed or otherwise negotiated. Every person who, with intent to defraud, signs the name of another person, knowing that he has no authority so to do is guilty of forgery."

Thereafter, the jury brought in a verdict of "We, the jury in the above entitled cause, find the defendant Vernon Mack guilty as charged."

The question involved was the prejudicial error at the commencement of the trial by the clerk's reading of the *original* information and *not* the amended information.

Section 1093 of the Penal Code directs the following procedure for trial by jury: "1. If the accusatory pleading be for a felony, the clerk must read it, and state the plea of the defendant to the jury, . . ."

In the case of *People* v. *Sourisseau,* 62 Cal.App.2d 917 [145 P.2d 916], the clerk inadvertently read the original information which charged the defendants with rape by force and violence, rather than the amended informations, which charged rape by threats of bodily harm which prevented resistance. In holding the error was not prejudicial, the court said at page 927: "The clerk did erroneously read the original informations to the jury but the court, through counsel's suggestion, ordered the jury to ignore what had been read and the clerk then read the amended informations and the defendants' pleas thereto, upon which issues the defendants went to trial. We see no prejudicial error in that procedure."

In our case, not only did the court fail to detect the error and order the clerk to reread the correct information, but in the final instructions to the jury the court compounded the error by advising the jury that the defendant was being tried on the [erroneous] information which had been read by the clerk.

During the trial the deputy district attorney said: "As you know, the two defendants are accused of forging a $40.00 check signed R. S. Froelick, and the check was made to Charles Jackson and it was cashed at Sniffin's Signal Service Station at the Dos Palos Y."

An exemplar of the handwriting of codefendant Arbuckle was introduced in evidence by the People, which defendant claims ". . . could have no other purpose than to prove that defendants had forged as well as passed the check in issue."

The deputy district attorney also described similarities in writing on the check and samples of Arbuckle's writing to which no handwriting expert testified as to the handwriting.

In *People* v. *Mitchell,* 92 Cal. 590, 593 [28 P. 597, 788], the defendant ". . . was charged with forging the check and uttering and passing it, and the jury was told he could be convicted of either under the law; now, even conceding that one of these elements of the offense only was fatally defective by reason of bad pleading, then the judgment must be reversed, for it is impossible to say, under the instructions of the court and the evidence introduced, but that the jury based their verdict upon the portion of the information which was absolutely void. No presumption can be indulged in to

support the judgment in this respect, for the jury was told that it could find the defendant guilty under either branch of the information.''

As stated in *People* v. *Turner,* 113 Cal. 278, 281 [45 P. 331] : ''As evidence was introduced under both counts, as the jury was instructed upon both counts, and as their verdict was general, it is impossible to say whether that verdict was based upon one or the other, or upon both of them. The judgment must, therefore, be reversed.''

And in *People* v. *Robinson,* 134 Cal.App.2d 430, 432 [285 P.2d 952] : ''It must be presumed that the clerk performed his duty and read only Count II.'' (See Code Civ. Proc., § 1963, subd. 15.)

 Plaintiff contends that the cases of *Mitchell* and *Turner, People* v. *Smith,* 103 Cal. 563 [37 P. 516], and *People* v. *Garnett,* 129 Cal. 364 [61 P. 1114], should not govern, since they were decided prior to the 1927 and 1929 amendments to section 952 of the Penal Code relating to the manner of charging criminal offenses and the rules liberalizing pleadings in criminal cases, citing 22 California Jurisprudence 2d, Forgery, section 27, pages 558-559.

The case of *People* v. *Pierce,* 14 Cal.2d 639 [96 P.2d 784], discusses the effect of the 1927 and 1929 amendments. At pages 645 and 646, quoting with approval from *People* v. *Beesly,* 119 Cal.App. 82 [6 P.2d 114, 970], the court said :

''Section 952, which formerly required the pleading to set forth the particular circumstances of the offense charged, as amended, declares that it shall be sufficient if it be 'in any words sufficient to give the accused notice of the offense of which he is accused.' There, in a nutshell, is stated the principle of our present simplified form of pleading of a criminal offense—the accused is entitled to notice of the offense of which he is charged but not to the particular circumstances thereof, such details being furnished him by the transcript of the testimony upon which the indictment or information is founded.''

It does not appear that rules liberalizing pleadings in criminal cases permit trial upon an original information, which had been superseded by an amendatory pleading. As stated in *Wright* v. *Rogers,* 172 Cal.App.2d 349, 361 [342 P.2d 447] : '' 'It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading. . . .' (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 384-385 [267 P.2d 257].)'' and

in *Armstrong* v. *United States,* 16 F.2d 62, 64: "When an information is amended, the original information is thereby set aside and abandoned."

Plaintiff admits that the action of the clerk in misreading the information was error, but contends that a duty rested on defendant to call such error to the attention of the trial court in order that it might be corrected. The argument is based on the fact that defendant, with full knowledge of his rights to counsel, waived such rights.

It is well established that questions not raised in the trial court may not be considered on appeal. An error in reading the charge is an irregularity in a matter of criminal trial procedure which must in some way be called to the attention of the court at the time the alleged error occurred and it may not be raised for the first time on appeal. (3 Cal.Jur.2d, Appeal and Error, §§ 140, 152, pp. 604, 628, 629, citing *People* v. *Douglass,* 87 Cal. 281 [25 P. 417].)

"The general rule precluding the raising of questions for the first time on appeal is subject to exception where fundamental error or gross irregularity is involved. Thus, a reviewing court will consider an objection first made on appeal that the trial court had no jurisdiction of the subject matter of an action, or that a pleading failed to state a cause of action." (3 Cal.Jur.2d, Appeal and Error, § 141, p. 605.)

Plaintiff urges that the defendant's appearing in propria persona does not relieve him of his duty. In *People* v. *Harmon,* 54 Cal.2d. 9 [4 Cal.Rptr. 161, 351 P.2d 329], the court stated, at page 15:

". . . having competently elected to represent himself, defendant 'assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken.' (*People* v. *Mattson,* 51 Cal.2d 777, 794 [17] [336 P.2d 937].)" To the same effect are *People* v. *Chessman,* 38 Cal.2d 166 [238 P.2d 1001]; *People* v. *Pearson,* 150 Cal. App.2d 811 [311 P.2d 142]; *People* v. *Williams,* 174 Cal. App.2d 364 [345 P.2d 47]; and *People* v. *Duncan,* 175 Cal. App.2d 372 [346 P.2d 521].

The court instructed the jury on the law of forgery by indorsement and by signing the name of another without authority, and on the law of aiding and abetting. Evidence was introduced to show that Arbuckle signed the name "R. S. Froehlick" as maker of the check and the name "Charles Jackson" as indorser, without authority of either. The evidence was

limited to the purpose of showing intent to defraud. The instructions permitted the jury to find defendant Mack guilty of forgery by indorsement and by signing the name of another without authority, as an aider and abetter of Arbuckle, when he was not charged with that branch of the offense of forgery.

■ "Even though an instruction is couched in proper language it is improper, if it finds no support in the evidence, and the giving of it constitutes prejudicial error if it is calculated to mislead the jury." (*Davenport* v. *Stratton*, 24 Cal.2d 232, 254 [149 P.2d 4].)

■ Ordinarily the giving of these instructions would be error. In this case defendant specifically requested that the jury be instructed as to the law of forgery, and the People urge that the errors in the instructions were thus invited by defendant and that they therefore cannot be considered. However, the defendant did not request any specifically worded instruction and he therefore cannot be held liable for the court's errors as to their form or content.

■ If error first urged in the appellate court might have been easily obviated in the court below had objection there been made, it will not be considered on appeal (3 Cal.Jur.2d, Appeal and Error, § 141, p. 605, and cases there cited). Had defendant called to the attention of the trial court the error of the clerk in reading the original, rather than the amended, information, the irregularity in trial procedure could have been cured. Had he objected to the references of the deputy district attorney to "forgery," the word complained of could have been clarified. Had he objected to the instructions of which he now complains, they would not have been given. But we cannot adopt the view that a defendant, in a criminal case, has the whole burden of seeing that an information is correctly read, or that the court properly instructs the jury.

Assuming cumulative error, however, the question now presented is whether the error requires a reversal in view of the provisions of article VI, section 4½ of the Constitution.

"The controlling consideration in applying the section is whether the error has resulted in a 'miscarriage of justice.'

. . . . . . . . . . . . .

. . . a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson*, 46 Cal.2d 818, 835, 836 [299 P.2d 243].)

■ This court feels that it was substantial error to read a nonexistent information because by its amendment it had been completely eliminated; that it was not the duty of the defendant to recognize the difference between the original information and the amended information; that it was the duty of the clerk to read the right information; and, further, it was the duty of the court and likewise the duty of the district attorney, to see that the right information was read and, in particular, where the defendant was not represented by counsel. The errors could have been cured had the officers of the court been paying strict attention to the charge. This was further compounded by the judge reading the instructions, stating that the information had already been read to the jury by the clerk. Evidence of both charges in the so-called original information was introduced and it was very difficult for the jury to distinguish between "making" and "passing" the check. Thus, defendant was charged and tried on an information to which he had not even entered a plea.

Even the public and our citizenry are entitled to expect that our courts read the correct complaint or information. This is a vital part of the judicial process of the United States form of government.

In *People* v. *Clancy,* 203 Misc. 82 [114 N.Y.S.2d 375], the defendant was tried in the Police Court upon an amended information which was not read to the defendant and on appeal, the county court held that the failure to read to defendant an amended information changing essentials of the crime charged and failure to require the defendant to plead thereto was prejudicial, and invaded his substantial rights. The judgment of conviction was reversed and a new trial granted.

In the instant case, defense witness, Evie Lonita Killian, testified that on the 23d day of September, 1960, the defendant Vernon Elmer Mack accompanied her to Bakersfield for the purpose of visiting a sister of the witness; that the defendant remained in Bakersfield with her until their return to Dos Palos on the following Monday, September 26, 1960. Although this evidence conflicted with evidence introduced by the People, it was within the discretion of the jury to resolve the conflict and accept the witness' testimony as true, and find the defendant did not utter the check in Dos Palos on September 24, 1960. It is possible the jury believed that defendant actually forged the check by signing the name of another

without authority, or by aiding and abetting and thereby becoming a principal, and found the guilty verdict accordingly.

The judgment and order denying a new trial are reversed.

Conley, P. J., and Stone, J., concurred.